Benedict, D. J.
This action is brought to recover damages for personal injuries caused by the falling of a mass of dunnage and plank upon the libellant while he was engaged in trimming the cargo of the bark Kate Cann, in the harbor of New York, on the twenty-first day of November, 1878.
The facts are as follows: The bark Kate Cann was an English vessel, under a charter to receive and transport a cargo of grain. The grain was being put into the vessel from an elevator in the Atlantic dock. The libellant was one of several persons who had agreed to trim the grain as it came into the hold from the elevator spout for so much a bushel, *242 paid by the elevator company. At the time of receiving the injury complained of the lower hold was about full of grain, and the libellant was sitting in the between-decks, his work having been suspended for the moment to permit a change in the position of the elevator spout. In the between-decks, and behind and above the libellant, when so seated, a quantity of dunnage and plank had been stowed behind two braces, each running from the ceiling at a point about midway between the decks to a point on the deck beam above, several feet from the vessel’s side, and forming a sort of rack. While the libellant was seated as above described, nearly under this dunnage, the braces gave away, and the whole mass fell upon him, causing him injuries of a serious character.
The evidence leaves no room to contend that the libellant is in any degree responsible for the falling of the dunnage upon him. He had nothing to do with the stowing of it, nor is there any evidence of his having interfered with it after it was stowed; nor was its fall occasioned by any act of his. The braces supporting the dunnage had been put up by the second mate of the vessel, some 10 days before the accident, for the purpose of stowing the dunnage behind them, and the dunnage was piled upon them by the second mate and two of the crew. Six of these racks were put up at the same time and filled with dunnage. This method of stowing dunnage in the between-decks, in order to have it out of the way until needed for use, is not unusual. On the morning of the day on which the accident occurred two heavy planks were taken by the crew from the main deck of the vessel, and placed in that one of the racks which subsequently fell upon the libellant.
There is no evidence that the libellant had knowledge of this increase of the weight resting upon the braces under which he seated himself, nor did anything occur to call the libellant’s attention to this dunnage; and there is no evidence to lead to the conclusion that any person interfered with it between the time of placing the plank upon it, at about 9 a. m., *243 and its fall at about 5 p. m. of the same day. The fall was without warning or any apparent cause other than the excessive weights pressing upon the braces. After the accident one of the braces was found to have broken, but it cannot be told whether the braces broke first, or whether the fastenings of the braces first gave way. From these facts the fair inference is that the placing of the heavy plank in this rack overweighed the braces and rendered the mass insecure.
From the moment of the addition of the plank the mass in its then position was a dangerous structure, erected in a place where men were required to be, and calculated at any moment to inflict great bodily harm.
Whether upon these facts the libellant is entitled to the relief he seeks by this proceeding is the question now to be determined. The jurisdiction of a court of admiralty to condemn a ship to pay damages arising from the neglect of the owner or master of a ship to discharge a maritime duty arising upon navigable waters cannot be deemed open to question. There are many adjudged cases in which it has been said, in respect to torts, that the - jurisdiction arises from the locality alone.
“The jurisdiction of courts of admiralty, in matters of contract, depends upon the nature and character of the contract, but in torts it depends entirely upon locality. If the wrongs be committed on the high seas, or within the ebb and flow of the tide, it has never been disputed that they come within the jurisdiction of that court.” Phila., W. & B. R. Co. v. Phila. & Havre de Grace 8. Tow-boat Co. 23 How. 215; S. B. Co. v. Chase, 16 Wall. 53.
It is almost a daily occurrence in these courts, not only to entertain jurisdiction, but to charge the ship with damages suffered by other ships because of neglect on the part of the crew properly to navigate the offending ship. So, also, it is not an infrequent occurrence to charge an offending ship with personal injuries resulting from her improper navigation, and this when the person injured is in no way connected with the offending ship. The Washington v. The Gregory, 9 Wall. 513.
*244 In cases of this description the ship herself is held responsible for the failure of her crew to discharge a duty arising out of the navigation of the ship, and owing to all other ships and the persons on board thereof. In such cases admiralty courts apply to the ship herself the rule that “a principal is liable for the acts and negligence of the agent in the course of his 'employment, although he did not authorize or did not know of the acts complained of.” R. Co. v. Hanning, 15 Wall. 649. “By the maritime law the vessel, as well as the owners, is liable to the party injured for damages caused by its torts. By that law the vessel is deemed to be an offending thing, and may be prosecuted without any reference to the adjustment of responsibility between the owners and employes for the negligence which resulted in the injury.” Sherlock v. Alling, 93 U. S. 108.
So, also, ships are charged in the admiralty for a failure of their crews to perform contracts made for the transportation and safe delivery of the cargo of the ship. In those cases the ship herself is charged because of the relation of the contract to the employment of the ship; but the liability of the ship is not confined to cases arising from faulty navigation, or out of a breach of the contract of affreightment, as was said by the learned judge who rendered the decision in the case of the Germania, so greatly relied on by the claimants. But in all these cases there is a duty on the part of the officers and crew, as representing the owner, and in the discharge of the authority entrusted to them by him, and while acting within th6 scope of such authority, not be negligent towards the person to whom the liability is incurred. The duty may arise out of the fact that the vessel is being navigated, or is anchored in the pathway of other vessels, or has a relation by contract to the person injured, in person or property, and no doubt out of other circumstances. Jennings v. Bark Germania, Blatchford, J., MSS. March 12, 1878.
Such a liability, in my opinion, exists where damage arises from the neglect on the part of the owner of a ship to discharge any duty arising on navigable waters out of the em *245 ployment of the ship as an instrument of commerce, and owing to the person injured. If, then, it appears in this case that there was a duty owing to the libellant in respect to the manner of stowing the dunnage and plank that fell upon him, and it also appears that such duty arose out of the employment of the ship as an instrument of commerce, and to be performed on navigable waters, the jurisdiction of this court to condemn the ship, and the right of the libellant to require that the ship be held to be charged with the damages caused to him by the omission of that duty, must be upheld.
I proceed, therefore, to the inquiry whether the owner of this ship, who, for the purposes of this inquiry, must be held to be represented by the crew of the ship, under the rule-already stated, became charged with any duty towards the libellant in respect to the stowage of the dunnage and plank that caused the injury in question. The character and position of the dunnage and plank here become important, and it is to be noticed that the weight of the mass, and its position at the top of the between-decks, and overhanging the space where men must necessarily be at work, rendered the structure dangerous to life, unless it was properly secured» It was so arranged that, from its nature, it was dangerous to all persons who might be in that part of the between-decks. It was at all times, at least from the time of the addition of the planks to the weight resting upon the braces, equally dangerous, and necessarily so. The danger arose not from any use of the thing, but from the thing itself.
So far as the character of the structure affects the question of liability, this case seems to be within the principle of the case of Thomas v. Winchester, 6 N. Y. 397; for in this case, as in that, the death or great bodily harm of some one was the natural and almost inevitable consequence of the structure as it was at the time it fell. Such being the character of this structure, in case the mass was not properly secured, if the libellant was in the between-decks of this ship in the exercise of a right to be there, the ship-owner owed him a duty to see that the dunnage and plank were properly secured, which duty was not properly performed.
*246 In regard to the presence of the libellant in the between-decks, the evidence shows that he was not there by the mere sufferance or license of the ship-owner, but for the purpose of performing a service that could not be performed elsewhere, and in which the ship-owner had an interest. To be sure, the libellant was not directly employed by the ship-owner, and it may be truly said that no relation by contract existed between the ship-owner and the libellant. But the libellant was triming the ship-owner’s ship. He was doing what was necessary to be done to enable the ship to carry the cargo in safety, and the reason why he was so employed was because the shipowner had, by a contract with the charterer, indirectly provided for the performance of this service.
There was a relation between the ship-owner and the libellant arising, not out of the mere presence of the libellant on board the ship, but out of the service he was then engaged in performing, the necessity of that service to the ship-owner, and the circumstances of the libellant’s employment to perform that service. The libelant had, therefore, a right to be where he was; and it follows that there was a duty on the part of the owner to see to it that the dunnage and plank stowed above him were so secured as to prevent its falling upon him of its own weight. Nicholson v. The Erie R. 41 N. Y. 533.
The libellant’s case differs from the case of the Germania, to which reference has already been made. In the case of the Germania a charterer of the ship had contracted to deliver to the ship a cargo of grain in bags. The libellant was employed by the charterer to sew up the bags of grain as they were filled, and while walking over the deck of the ship fell through an open hatchway and was injured. In that case it was not necessary that the bags be sewed on board the vessel, or indeed to be sewed at all except to enable the charterer to perform his contract to deliver the grain in bags. In this case the grain could not be carried unless it was trimmed on the ship, and the libellant was injured while engaged in performing that service. This libellant was, in a very proper sense, required by the ship-owner to be in the between-decks of the *247 ship, and he was there engaged in ship’s work. The ship’s officers testify that they were seeing to it that the grain was properly trimmed. It would be strange indeed if he could be there so engaged without any duty on the part of the owner of the ship to see to it that he was not subjected to the peril arising from such a structure as the evidence discloses this pile of dunnage and plank to have been.
Moreover, in the case of the Germania, the injuries arose from that common and at most times necessary feature of a ship’s deck while in port, viz., an open hatch; while here the libellant was injured because of the dangerous character of a structure erected in the between-deeks, as to the nature of which the libellant had no means of informing himself, and respecting which he was informed by no one. This ease would seem to be within the rule as stated in Smith v. Dock Co. 3 L. R. C. P. 326, that persons inviting others on their premises are answerable for anything in the nature of a trap upon their grounds. It is certainly within the principle of the case of Indemaux v. Dawes, 2 L. R. C. P. 311, where a gas-fitter, having contracted to fix certain gas apparatus to the defendant’s premises, sent his workman, the plaintiff, after the apparatus had been fixed, and by appointment with the defendant, to see that it acted properly, and the workman having gone upon the defendant’s premises fell through an unfenced shaft in the floor and was injured. In that case the plaintiff was held entitled to recover because he was not a mere volunteer.
For these reasons I conclude that the damages sued for arose from the neglect of a duty owing by the ship-owner to the libellant. This neglect was the neglect of a maritime duty, and attaches to the ship herself. Not only did the neglect occur upon navigable water, but in the performance of a •service necessary to be performed to enable the ship to receive her cargo. The stowing of this dunnage was part of the ordinary duty of the ship’s crew, and in this case was done by the crew. The object of stowing the dunnage was to facilitate the taking in of the very cargo upon which the libellant was *248 employed at the time he was hurt. Still further, the dunnage and plank that, by reason of neglect in the manner of stowing, fell upon the libellant, were part of the apparel and furniture of the ship.
In legal effect the blows inflicted upon the libellent were blows of the ship, and for blows given by the ship she has always been held liable; as, for instance, in cases of collision. It thus appearing that this is a case where the damage sued for was caused by the wrongful neglect, upon navigable water, of a duty owing to the libellant by the owner of this ship, and arising out of the employment of the ship, in her capacity as a carrier of cargo, I must adjudge the vessel herself to be liable for such damage, and she is accordingly condemed to pay the same. Let a reference be had to ascertain the amount of the damage.