ANDERSON, Adm'x, *v.* SCULLY.

*(District Court, S. D. New York.   May, 1887.)*

1. NEGLIGENCE—WHARVES AND SLIPS—LICENSE TO CROSS INTERVENING BOAT.
   Vessels necessarily mooring in the slips of this harbor, outside of other vessels next the wharf, have an implied license for their officers and men to cross the intervening boat for necessary purposes on shore; but such a license does not impose any duty upon the owner, as respects the licensee, to keep all possible modes of crossing safe, but, at most, only such passage-ways as are designed or known to be customarily used as such.
2. SAME—CASE STATED—OPEN-DECK BOAT—HATCH COVERS MISPLACED.
   The canal-boat L. E. having properly moored within a slip, along-side of a scow lying outside of the steamer M., the libelant undertook to go across the scow to reach the wharf.   The scow was an open-deck boat, with a roof beginning two and one-half feet above the deck, formed by numerous hatch covers.   The libelant, instead of going around and passing along by the deck, clambered upon the roof of hatch covers in order to go straight across.   As he stepped upon the hatch covers beyond the peak, he fell through into the hold, through some insecurity of the covers, and soon after died.   *Held,* that the scow was not answerable for damages, for the reason that crossing over the hatch covers, though sometimes practiced, was not the mode of passage designed, nor a passage-way that the owner was bound to maintain as such for the benefit of licensees, there being a safe passage by the deck; and that there was no invitation or inducement from the scow to the libelant to cross the hatches, nor anything in the nature of a trap or pitfall in the passage he would be naturally expected to take.

In Admiralty.
*Hyland & Zabriskie,* for libelant.
*Edwd. D. McCarthy,* for respondent.

BROWN, J.   On the morning of June 8, 1886, the canal-boat Lizzie Eugene was brought from Hoboken to the pier at West Twenty-fourth street, North river, to take coal from the steamer Martello, which lay along-side the wharf.   Outside of the steamer lay Scow No. 9, which was also engaged in the same work of discharging the Martello for the same company.   The canal-boat had brought a large skid from Hoboken for the use of the scow.   The captain of the canal-boat, on arrival, having moored along-side No. 9, started to cross the latter boat to report to the stevedore in reference to the skid.   In crossing the scow, he fell down into the hold, and was so badly injured that he died within a few hours.   This action is brought by the administratrix to recover for the negligence of the scow, under the law of the state, which gives an action for damages for death caused by negligence, not exceeding the sum of $5,000.

The scow was what is known as an "open-deck boat," having a narrow deck passage-way along each side, and in front, and at the stern; while the center of the boat was divided into four compartments of hatches, which were supplied with large hatch covers, forming a roof with two sloping sides.   The deceased, instead of going around by the deck passage to cross to the Martello, after reaching the deck, clambered about two and one-half feet upon the hatches, which were securely fast-

v.31 F.no.3—11

ened upon the port side, ascended the roof-shaped hatches to the central peak, and, as he stepped upon the hatch covers upon the opposite side of the peak, fell through, because, as alleged, the covers were not in proper place. The only witness of his fall was his son, who was a few feet behind him.

There is considerable difference in the testimony as to the precise spot where he fell; the respondents claiming that it was at a point where the hatch covers had been taken off and piled several upon each other, so that the deceased must have stepped upon the pile, which slipped, and caused his fall. The son, however, who saw the fall, testified to the contrary.

I do not think it necessary to determine this question; for, upon the other branch of the case, I feel bound to hold that there was no such obligation or duty owed by the scow to persons crossing the hatches, in the way the deceased attempted to cross, as to constitute legal negligence towards him, even if the hatch covers were not in a secure position; and consequently that no action under the statute has accrued. In case of vessels moored of necessity along-side of each other, in this harbor, there is, I think, an implied license to those having business on the docks to cross and re-cross the vessels that lie between. But this license is not accompanied by any duty to keep all parts of the boat crossed over secure against possible accident to strangers who may hurry across at any time, and in any direction, without notice or inquiry. *Belford* v. *Canada Shipp. Co.*, 35 Hun, 347. The deck furnished a safe and easy passage in this case. It was the natural and proper passage. The roof formed by the hatch covers was not designed as a passage-way. There was nothing reasonably calculated to lead persons wishing to cross the boat to suppose that the hatches were designed for any such purpose, and there was nothing that could be construed as an invitation or inducement to strangers to climb up two and one-half feet, and pass over them, instead of going round by the deck.

The general principles applicable to accidents to licensees are fully discussed by BIGELOW, C. J., in the case of *Sweeny* v. *Old Colony R. Co.*, 10 Allen, 368, 372, and they do not sustain a recovery under circumstances like the present. There was nothing here in the nature of a trap or pitfall in the passage which persons going to and from the dock would naturally be expected to take. See *Bolch* v. *Smith*, 7 Hurl. & N. 736, 744. The evidence shows, indeed, that persons in haste might, and no doubt often did, run across the hatches, but I must regard this as done at their own risk. It would be an unwarrantable extension of an implied duty to hold the boat bound to make all possible ways of crossing by strangers safe, and I cannot regard the hatch covers as constituting such a natural or usual passage-way as entitled strangers, upon a mere license of this kind, to have them maintained safely for their benefit, at the owner's peril. I feel constrained, therefore, to dismiss the libel; but it must be without costs.