### THE WILLOWDENE.

#### (District Court, E. D. New York. July 9, 1900.)

SHIPPING—INJURY OF STEVEDORE—LIABILITY OF SHIP.

A ship which was being navigated by the owners under a time charter entered port, and was taken possession of by the charterers, to be by them discharged and reloaded. She was discharged by employés of the charterers, and was directed to proceed to another wharf at no great distance for reloading. While on the way, libelant, who was a stevedore in the employ of the charterers, with others, was directed by them to wash the holds preparatory to reloading. In removing the cover from a hatchway, libelant stepped upon another part of the cover, which gave way by reason of its having been improperly replaced by the stevedores after discharging, and libelant fell through the hatchway, and was injured. The hatch cover was in sufficiently good condition, and was safe to stand upon if properly placed. *Held*, that the ship, being, under the charter, under the sole control of the charterers while in port, for the purposes of being discharged and reloaded, was under no duty with respect to the placing of the hatch covers during such time, and could not be held liable for the injury.

In Admiralty. Suit in rem to recover for a personal injury.

McBarron & Kaven and Martin A. Ryan, for libelant.

Convers & Kirlin and J. Parker Kirlin, for claimant.

THOMAS, District Judge. On the 9th day of May, 1899, at about 4 o'clock p. m., the libelant fell through No. 3 hatchway of the steamship Willowdene, while the vessel was shifting from the American Sugar Refinery, in the East river, New York, to pier 47 in the North river. The vessel had brought in a cargo of sugar to New York, which was discharged at the sugar refinery by the American Sugar-Refining Company, whose charges therefor were adjusted by the charterers of the vessel. After such discharge, the charterers sent the libelant and other of their stevedores to wash the holds of the ship in preparation for cargo. For the purpose of entering the hold, the libelant was removing some of the covers of the No. 3 hatch, and upon stepping upon one of the covers, while lifting another, the cover upon which he was standing tilted under his weight, and he fell into the hold. No. 3 hatch is about 12 feet square, and had 15 covers arranged in three tiers, with 5 covers in each tier. These hatch covers and their supports were in sufficiently good condition, and, if the cover which caused the injury had been suitably adjusted to the space for which it was intended, it would have been reasonably safe to stand upon. In the present instance the cover either was not placed upon a proper section or opening, or, if so placed, it had not been properly adjusted. The covers had all been removed by the stevedores of the sugar-refining company, and had been replaced by them, and were so fairly adjusted that neither the libelant nor his fellow workmen, who were engaged at that point, observed any improper replacement of the covers. Yet it must be concluded that there had been an improper replacement, and the question is whether this imputed negligence to the ship. The ship was under a time charter, and all matters relating to its navigation were imposed upon the owners. The discharge or loading of the cargo fell upon the charterers, and for such purposes the ship was at the entire and sole disposal of the charterers. Therefore when the ship was at the dock of the American Sugar-Refining Company it was the privilege of the charterers to remove the covers of the hatches, and, after such removal, either to leave the hatches open or to replace the covers; and whatever was done in that regard was done at the instance and in behalf of the charterers, and not at all in behalf or under the direction of the ship; nor might the ship interfere therewith. The ship was to be taken from the sugar-refining company's dock in the East river to pier 47, North river, for the purpose of reloading it in the interest of the charterers, and in preparation therefor the charterers' servants were directed to wash the holds; and while attempting to do so the libelant, trusting to the proper replacement of the hatch covers, stepped on the same, as he had a right to do, and from the tipping of the cover received the injury. Now, the improper fitting in fact was made by the sugar-refining company's servants, and therefore by the sugar-refining company itself, and hence it was done by a person whom the charterers had employed to assist in the discharge of the vessel; and the question is whether the ship is liable for the negligence of the refining company, acting for the charterers, in replacing the hatch cover. That is, considering that the ship was in port, was at the dock to be unloaded, that the hatch covers had been taken off by the charterers, that the vessel was being

moved for the purpose of taking her to another dock, not distant, for the purpose of reloading, and the charterers were undertaking to prepare the ship for such reloading, and the charterers' stevedore was injured thereby, may it be said that the ship should have followed up the action of the discharging agents of the charterers, and have discovered whether the covers had been properly replaced? It is clear enough, both in reason and authority, that if the hatches had not been put on at all the ship would not have been liable had the libelant fallen through, and it would not have been the duty of the servants of the ship to exercise any care whatsoever under such circumstances to protect the libelant from any danger attending the open hatches. But, if there was an entire absence of duty if the covers were left off, upon what theory can it be claimed that it was the duty of the ship to keep track of the condition of the hatches, and see to it that, if any attempt was made to replace the covers, such attempt should be properly and successfully carried out? The holding in such case would be that the ship was under no obligation to see to it that the covers were replaced at all, but was obliged to use care, provided an attempt was made to replace them. Such position is illogical. The evidence preponderatingly shows that the arrangements for covering the hatches were suitable. The ship was in the course of unloading and reloading. The charterers were in the entire charge of that work. They had procured the removal of the hatch covers. They had procured the replacement of the hatch covers. The replacement was for the brief time which should elapse while the vessel was shifted to the point of reloading. Upon such state of facts it is concluded that the ship was in no way responsible for what may have been done in or about the replacement of the covers, nor was it the ship's duty to police the decks for the purpose of inspecting the work of the charterers and their stevedores or agents. A contrary rule would place under the necessary surveillance of the officers of the ship the duty of unloading and reloading, and all the other incidents attending the same. The whole theory of the law is that the ship belongs to the charterers in the matter of the cargo and its reception and removal, unless there be stipulations modifying the usual duty. The stevedores had a right to leave the covers off, or partly off, or to put them on temporarily for the purpose of going from one dock to another, where they were to be removed again, or, as in the present case, to replace them after the hold was discharged for the purpose of taking them off at an early time to wash the holds. This work was entirely that of the charterers, with which the ship had nothing to do whatever. The fault follows the possession and right of use of the holds, and such right was vested in the charterers alone, and they alone were exercising the right; and no vigilance was required of the ship to protect the charterers' servants against a negligent exercise of that exclusive right. The libelant was injured. It may be that the charterers are liable therefor, but the ship is not. The libel should be dismissed, with costs.