## CONLEY v. CONSOLIDATION COASTWISE CO.

(District Court, S. D. Maine. May 1, 1917.)

No. 393.

1. SHIPPING ☞84(2)—LIABILITY OF VESSEL—INJURY TO STEVEDORE.

The duty of a ship to a stevedore is to exercise reasonable care in providing him with a safe place to work, and in keeping the premises where he has a right to be secure against danger to life and limb. While the deck of a ship is not a highway, it must be made reasonably safe for workmen who are invited to render service to the ship, and who are in the exercise of ordinary prudence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 351.]

2. SHIPPING ☞84(3, 5)—INJURY TO STEVEDORE—LIABILITY OF VESSEL—CONTRIBUTORY NEGLIGENCE.

Libelant, with others, was employed as a stevedore by an independent contractor in discharging a coal barge. On coming from the hold at night, he went across the deck for his coat, passing over one side of No. 2 hatch. He recovered his coat, and in starting for the dock side of the barge stepped upon the other side of the same hatch cover, and fell through into the hold, and was injured. It was the custom of the crew, as soon as a hatch was discharged, to replace and secure the covers. This custom libelant knew, and also that No. 2 hatch had been discharged; but he did not look to see whether the covers had been secured. They had been put in place and secured on one side, but not on the other. *Held*, that the vessel was negligent in leaving them in such condition, without marking them by a light, or otherwise to give warning of the danger, but that libelant was also chargeable with contributory negligence in not looking, where he knew there was likely to be danger.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 350.]

In Admiralty. Suit by Michael Conley against the Consolidated Coastwise Company. Decree for libelant.

Richard E. Harvey, of Portland, Me., for libelant.
Gerry L. Brooks, of Portland, Me., for libelee.

HALE, District Judge. This is a libel in personam against the owners of a barge to recover damages for personal injuries alleged to have been sustained in consequence of negligence of the master and those intrusted with her management.

The libelant was a stevedore, and at the time of the injury was in the employ of the A. R. Wright Company, and engaged, with others, in discharging coal consigned to that company, out of the hold of barge No. 23, then lying at the company's wharf, port side to the wharf, starboard side offshore. When the libelant went to work on the morning of March 16, 1916, it being bad weather, he hung his coat under the mainsail; the main boom being then offshore. He worked in the hold of the barge all day, until nearly 7 o'clock in the evening, when he came on deck, on the starboard side of the barge. He found the main boom had been changed over from its offshore position, and had been trimmed fore and aft. He was compelled to go across No. 2 hatch to get his coat. He started across, secured his coat, put it on, and, going under the boom, started to cross the hatch on the inshore or port side. He stepped upon the hatch covers, which had not been securely placed, and which tilted under his weight; he was thrown into the hold of the barge, a distance of some 23 feet, breaking his left leg and three ribs.

The proofs show that the duty of taking care of the hatches devolved upon the master and crew of the barge; that the custom aboard the barge was, as the various hatches were discharged, the crew of the barge followed up the work by at once replacing the hatch covers, beginning forward, on the starboard side of such hatches as had been discharged, and working aft. The process was to put the strongbacks in place, after which the hatch covers, in sections of about 3 feet in width and 8 feet in length, were pushed temporarily up on the strongbacks, in such a position that the outer end extended some 8 inches beyond the outer edge of the hatch coaming, after which two men fitted them into their places by the use of hooks, completing one side of the hatch before anything was done on the other side. The proofs show that, on the day of the injury, Nos. 2 and 3 hatches had been fully discharged, and the hatch covers on the starboard side of these hatches had been replaced and securely fitted by Lewis, the engineman, with two deck hands, who had then proceeded to cover the port side of the hatches. The strongbacks had been put in place, and all of the hatch covers placed upon the strongbacks, as usual. Beginning at the after part of the port side of the hatches, part of the hatch covers had then been fitted into place; but some of them had not been so fitted. Among them were those on the forward bay of the port side of No. 2 hatch. These had not been fitted into their position, for the reason that the crew had not had sufficient time before the hour came for quitting work. There is some evidence tending to show that the presence of ice upon some of the covers made the fitting of them more difficult. Upon these hatch covers on the port side of No. 2 hatch the libelant stepped, and fell. He had climbed up on the starboard side over the hatch coaming, which was some 3 feet 10 inches high. He had gone across the starboard side of the hatch to the boom, had taken his coat, and put it on. He had then set out to go ashore, starting to cross No. 2 hatch on the port side, or inshore side, when he fell, as I have described. He said the hatches were right there in front of him, and that he did not look to see if the covers were on all right; that, in coming from the hold of the vessel, he had found the offshore side of the hatch

covered; that he received no warning to indicate that the inshore side was uncovered; that no guard or lantern was there, to indicate that there was any trouble before him from the insecure placing of the hatch covers; and that he had stepped upon the inshore covers without making examination, and was injured.

The libelant alleges that he had been working on barges for the last 16 years; that he had been accustomed to find the hatches covered as soon as the coal was discharged. The proofs on the part of the barge tend to show that, while the barges were being discharged, the booms were thrown offshore; that, as soon as the hatches were discharged, the booms were swung around between the rail and the hatch coaming, so as to enable men to get the covers on the hatches; that the hatch covers were immediately put on, and the booms hauled fore and aft, over the center of the barge.

The learned proctor for the respondent urges that, so far as this libelant is concerned, the duty of the barge ended when it provided him with a reasonably safe place to work and a reasonably safe passageway to and from his work; that the barge was under no duty to keep the hatches covered for him while he was on board, or to keep the hatch covers and appliances in their proper place, or in any way to aid him in getting his coat, which he had left on the main boom; that the barge owed no duty to him, or to other independent contractors, to provide lights for their convenience, or to guard them against risk resulting from an open hatch. The respondent relies upon the line of cases in which the federal courts have said that the deck of a ship is not a highway, that hatches are well-known sources of danger, and that to leave them open is not, in itself, evidence of negligence. Dwyer v. National S. S. Co. (C. C.) 4 Fed. 493; The Willowdene (D. C.) 103 Fed. 678; The J. W. Taylor (D. C.) 92 Fed. 192; The Santiago, 137 Fed. 323, 69 C. C. A. 653; The Saranac (D. C.) 132 Fed. 936; Anderson v. Scully (D. C.) 31 Fed. 161.

[1] It is well settled that the duty of the ship to the stevedore is to exercise the care of a reasonably prudent man in providing a safe place for him to work; in keeping the premises, where he has a right to be, secure against danger to life and limb. This duty arises out of the necessity of the stevedore's services to the ship. The deck of a ship is not a highway; but it must be made reasonably safe for workmen who are invited to render services to the ship, and who are in the exercise or ordinary prudence. The Joseph B. Thomas, 86 Fed. 658, 30 C. C. A. 333, 46 L. R. A. 58; Gerrity v. The Kate Cann (D. C.) 2 Fed. 241, affirmed (C. C.) 8 Fed. 719; The Frank and Willie (D. C.) 45 Fed. 494; The Martha E. Wallace (D. C.) 151 Fed. 353; Id., 158 Fed. 1021, 86 C. C. A. 673; Frederick Leyland Co. v. Holmes, 153 Fed. 557, 82 C. C. A. 511; Pioneer Steamship Co. v. McCann, 170 Fed. 873, 96 C. C. A. 49.

[2] The libelant was not in the employ of the barge. He was in the employ of an independent contractor, doing a necessary service in discharging her. He was there, then, at the invitation of the barge. He was entitled to have the premises, where he would properly be, made reasonably safe and secure for him. Conley was an experienced steve-

dore. He had been accustomed to find that, as soon as cargo had been taken out of the hold, the hatch covers would be securely placed upon such hatches as had been discharged. I find nothing unreasonable in his conduct in leaving his coat where he did, when he went to work, or in going after his coat at the time he did, when he was injured. The proofs show that a great part of the deck of this barge was covered with hatches; that, although there were passageways between the hatches, men were accustomed to go across the hatches in the performance of their duties. Lewis, the engineman who superintended the placing of the hatch covers, says he knew that people were accustomed to cross the hatches. Conley, then, was doing nothing unusual in crossing the hatches.

Upon the evening in question the libelant knew that the cargo had been discharged out of hatches No 2 and No. 3. When he went on deck he had reason, from his experience and his knowledge of the custom of the ship, to believe that the hatch covers had been properly placed on those hatches. It is clear that he left his work having such assurance. It appears from the proofs that the starboard side of No. 2 hatch had, in fact, been properly covered, and that, upon the port side of this hatch, the covers had been lightly thrown, but had not been securely fastened in place, and that no warning had been put upon them to call attention to their insecurity. Under all the circumstances of the case, I think it was negligence on the part of the ship to leave the covers of this hatch as they were left, at a time when the stevedores were about to leave the ship. If, for any reason, the crew were compelled to leave the hatch, for a time, insecurely covered, they should have placed some lantern or other warning upon it. I am constrained to find the respondent at fault, in that those in charge of the barge were negligent in failing to securely cover the port side of No. 2 hatch, or in failing to place a suitable warning upon it, and that such negligence contributed to the injury of the libelant.

Was the libelant in the exercise of due care? I think, as I have said, that Conley acted prudently in leaving his coat where he did, and in seeking to recover it. When he came upon the starboard side of the deck, and found that the main boom had been run fore and aft, and that his coat was over No. 2 hatch, he acted with due care in going across the starboard side of the hatch and recovering his coat. After he had secured his coat, however, he knew that a safe passage was provided for him if he retraced his steps across the starboard side of No. 2 hatch. But the direct way ashore was across the port side of the hatch. He, accordingly, went under the boom, in order to take the nearest way to the wharf. His testimony shows that he did not look where he was going. He says distinctly that he "did not look to see if the hatches were all right." He evidently refers to the hatch covers. He did not exercise the care of a reasonably prudent man, under all the circumstances of the case. On a dimly lighted deck he cannot be held free from fault, in stooping down, going under a boom, and proceeding across hatch covers, without looking, and without paying any heed to his steps. The case, in my opinion, falls within the decision in The Max Morris, 137 U. S. 1, 11 Sup. Ct. 29, 34 L. Ed. 586. There was fault on the part of the barge. There was contributory fault, also, on the

part of the libelant. In a case of personal injuries, although the damages are often divided equally, as in collision cases, the question of any other equitable division is now said to be open to the court. In The Max Morris the Supreme Court sustained the action of Judge Addison Brown in departing from the ordinary rule of dividing damages, although the court did not find it necessary to pass authoritatively on the question. Hughes on Admiralty, § 116; Benedict's Admiralty (4th Ed.) § 233; Pioneer S. S Co. v. McCann, 170 Fed. 873–880, 96 C. C. A. 49; The Victory, 68 Fed. 395, 400, 15 C C. A. 490; The Lackawanna (D. C.) 151 Fed. 499–501; The Serapis (D. C.) 49 Fed. 393–397.

The case is referred to George C. Wheeler, Esq., assessor, to report the full amount of damages sustained by the libelant. On the coming in of the assessor's report, I will pass upon all questions relating to damages.

The libelant recovers full costs.