## Case No. 5,360.

### The GERMANIA.

[9 Ben. 356.][1]

District Court, S. D. New York. March, 1878.

DAMAGE TO PERSON—RIGHT OF ACTION IN ADMIRALTY—LIABILITY OF OWNER AND VESSEL—PRIVITY OF CONTRACT.

1. In admiralty, the owner of a vessel is liable in personam, and the vessel is liable in rem, for injuries done to person or property by the negligence of the master and crew of the vessel, only where the owner would, under the same circumstances, be liable in a suit at common law.

[Cited in Gerrity v. The Kate Cann, 2 Fed. 244; The Rheola, 7 Fed. 782; The Kate Cann, 8 Fed. 720; The Victoria, 13 Fed. 44; The Carl, 18 Fed. 656; The Explorer, 20 Fed. 139; The Gladiolus, 21 Fed. 418; The Max Morris, 24 Fed. 862, 28 Fed. 882.]

[Cited in Davies v. Oceanic S. S. Co., 89 Cal. 280, 26 Pac. 827.]

2. A person not in the employment of a vessel or of her owners, nor acting in their service or for their benefit, and sustaining no relation to them by contract, has no right of ac-

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

tion in rem, in admiralty, against the vessel, for an injury received by him on board of her by falling through an open hatchway.

[Cited in Carriff v. Blanchard Nav. Co., 66 Mich. 646, 33 N. W. 748.]

In admiralty.

S. H. Randall, for libellant.

Beebe, Wilcox & Hobbs, for claimant.

BLATCHFORD, District Judge. This is a libel in rem against the bark Germania, to recover damages for personal injuries sustained by the libellant, by his having fallen through a hatchway in the between decks of the bark, into the lower hold, while the vessel was lying floating in the water, moored to a wharf in the city of New York.

The firm of Hagemeyer & Brunn, of New York, were agents of the bark, which was a foreign vessel. They did the business of the vessel at New York, on behalf of her owners. They were also general commission merchants, and as such, purchased and paid for, on behalf of certain parties in Europe, other than the owners of the vessel, a quantity of grain, destined for Portugal, which they shipped on board of the bark at New York, to be carried on behalf of the owners of the grain, to Europe. The grain was discharged into the bark from a steam elevator, and, as it came from the mouth of the spout of the elevator, it was received in bags. Each bag, after being filled, was sewed up in the between decks of the bark. The libellant was a sewer of bags, and was proceeding to his destined place for work when he fell through the hatchway. The libel alleges that the shippers or owners of the grain were to have the grain properly bagged for shipment on board of the bark, by persons duly employed for that purpose, among whom was the libellant. In another place it alleges that the libellant had been employed on behalf of the shippers of the grain. The ground of action set forth in the libel is, that the master and officers of the bark were negligent in leaving the hatchway open and unguarded.

The evidence shows that Hagemeyer & Brunn, as shippers of the grain, and acting on behalf of the owners of the grain, (and not as agents for the bark, or acting on behalf of the owners of the bark,) being under obligation to deliver the grain to the bark in sewed bags, contracted with one Williamson that he should furnish the bags, and furnish men to hold the bags under the spout of the elevator on the bark, and to sew up the mouths of the bags when they should be filled; that Williamson supplied the bags and employed one Scanlon, at the rate of so much for each bag filled and sewed, to furnish men to hold and fill and sew the bags, and to deliver the bags sewed to the employers of the bark; that Scanlon employed the libellant and other men; that Scanlon had the sole charge and direction of the men whom he employed; that Williamson paid Scanlon for filling and sewing the bags; and that Hagemeyer & Brunn paid Williamson for the bags, and for the filling and sewing of the bags.

The libellant, under his employment by Scanlon, went on board of the bark, and went down a ladder through a hatchway in the main deck to the between decks, and started to go to a distant point on the between decks to attend to the business for which he had been employed, and on his way fell into and through an open hole or hatchway into the hold of the vessel, and was seriously injured. It is contended that the master and officers of the bark, in leaving such hole or hatchway open or unguarded, so that the libellant fell into it, neglected a duty which they owed to the libellant, and that the vessel is liable in rem, for the injuries to the libellant.

It is undoubtedly true, that the jurisdiction of the admiralty over marine torts depends upon locality. This means that the tort must have been committed on navigable waters within the cognizance of the admiralty. But the owner of a vessel is liable in personam, and the vessel is liable in rem, for injuries done to person or property by the negligence of the master and crew of the vessel, only where the owner would, under the same circumstances, be liable in a suit at common law. The fact that the tort, if a tort, was committed on navigable waters, makes the case one of admiralty cognizance. But the fact that the occurrence took place on navigable waters, still leaves open the question whether the circumstances of the case were such as to amount to a tort. The duty of the officers and crew of a vessel to see that the vessel does no injury, while she is being navigated, to another vessel, or to persons and property on board of such other vessel, makes the shipowner and his vessel liable, if such injury is negligently done. So, their duty to see that a passenger on their own vessel suffers no injury from them, or from any one on board, creates a liability on the owner and the vessel if such duty is negligently discharged. But, in all these cases, there is a duty on the part of the officers and crew, as representing the owner, and in the discharge of the authority entrusted to them by him, and while acting within the scope of such authority, not to be negligent towards the person to whom the liability is incurred. The duty may arise out of the fact that the vessel is being navigated, or is anchored in the pathway of other vessels, or has a relation by contract to the person injured in person or property, and, no doubt, out of other circumstances. But no case can be found where the duty has been held to exist under circumstances such as those in this case. Here the libellant was not in the employment of the vessel or of her owners, nor acting in their service or for their benefit. He sustained no relation to them by contract. All that can be said is that the accident happened on board of the vessel. But that mere fact cannot remove the difficulty, that in no event could it be held that there was any

breach of any maritime duty or obligation on the part of the officers of the vessel.

The libellant may have been rightfully on the vessel, and not a trespasser, and it may be considered that he was there with the assent of the officers of the vessel; but it by no means follows that the vessel or her owner is liable for what occurred, even though the leaving the hatchway open was a negligent and careless act on the part of some person. There was no contract between any one representing the vessel and the libellant, and there was no duty to the libellant on the part of the officers and crew of the vessel. Loop v. Litchfield, 42 N. Y. 351.

I have preferred to put the decision of the case on the views above stated, but I am not satisfied that there was any negligence on the part of the master, officers or crew of the vessel. The opening was a usual one, in a usual place, and, if an obligation rested on any person to warn the libellant in regard to it, it was one which, under the circumstances, did not rest on the ship's company.

The libel is dismissed, with costs.