## The Max Morris.

*(District Court, S. D. New York. August 18, 1885.)*

1. STEVEDORES—PERSONAL INJURIES.
   Vessels employing stevedores to work upon the ship are bound to provide reasonable safeguards against danger arising from peculiarities in the construction of the vessel.

2. SAME—MUTUAL FAULT.
   The steamer M. M. employed the libelant as one of a gang of stevedores' men to shovel coal at night. There was a "lower bridge," about 50 feet long, amid-ships, extending across from rail to rail, about six feet above the main deck, over which the libelant had to pass. He went up a ladder forward on the port side, through the opening in the guard-rail, passed directly aft to an opening in the rail corresponding to that forward, except that the opening was four inches narrower. Supposing it to lead to a similar ladder, he went to step down, but, no ladder being there, he lost his hold, fell, and broke his collar-bone, and was laid up three months. The latter opening had never been used for a ladder, and was not guarded. *Held,* that there was negligence on both sides: in the ship, because the opening was unusual and dangerous, and should have been guarded; in the libelant, for not using more caution in the night-time upon a ship with which he was unacquainted.

3. SAME—DAMAGES ALLOWED.
   Following *The Wanderer*, 20 Fed. Rep. 140, 72 days' wages were allowed the libelant, notwithstanding his concurrent negligence, as within the discretionary power of a court of admiralty, and because demanded in the interests of justice and humanity, as well as of public policy, to prevent the multiplication of accidents whereby the poor become a public charge through the concurring fault of others. Various classes of cases cited in which damages are divided in admiralty.

In Admiralty.   Personal injuries.

*Jas. A. Patrick,* for libelant.

*Butler, Stillman & Hubbard* and *W. Mynderse,* for claimant.

BROWN, J.   The libelant was one of a gang of stevedores' men who, on the evening of October 27, 1884, went aboard the steam-ship Max Morris, lying at her wharf, to shovel coal.   In passing from forward aft, the libelant was obliged to pass over what is termed the "lower bridge," a structure about 50 feet long amid-ships, extending from rail to rail, and about 6 feet above the main deck.   He went up a ladder of the usual kind on the port side; passed directly aft on that side; and, finding an opening through the guard-rail at the after-end of this lower bridge, corresponding in place with the forward opening, supposed it to lead down to a ladder similar to the ladder forward.   It being nearly dark, he did not observe and did not suspect that no ladder was there; and, putting his foot down to the supposed steps, lost his hold, fell to the main deck below, broke his collar bone, and was for a time disabled.   This libel was filed to recover his damages.

Each side strenuously contends that the other is solely to blame for this accident.   The ship is claimed to be responsible, because her construction was unusual; because this rear opening was dangerous and calculated to mislead persons not previously acquainted with the peculiar structure of the ship; because the opening through the railing was in a place where a ladder would naturally be expected; and because, being unguarded by a chain or otherwise, and not notified to the libelant, it was no better than a pitfall for the unsuspecting workmen.   The libelant is claimed to be solely responsible, because he exercised no reasonable caution in going in the night-time about a ship with which he was unfamiliar; because ships vary in the details of their construction as much as houses, and no set type can be presumed upon; because the opening in the rail at this place was not designed for a ladder, but for the play of the small-boat which was upon the outer side of it; because no ladder had ever been there, and the opening was but 14 inches wide, whereas the opening for a ladder is always at least 18 inches wide; and because it was evident carelessness, as it is said, for a laborer to push through so narrow an opening at night and undertake to go down without first ascertaining whether there was a ladder there or not.

The evidence shows that the construction of this "lower bridge" was somewhat unusual but not unexampled, and that the descent aft was on the starboard side from a platform extending fore and aft and facing amid-ships.   The experts examined differed as to the propriety or necessity of a guard at an opening of but 14 inches, such as that through which the libelant fell.   The very competent expert on the part of the steam-ship apparently based his testimony, in part at least, upon the assumption that a man could not pass through such an opening without turning or squeezing.   Experiment, however,

shows that this might possibly be done, though not readily; and that it would not be likely to happen in a person's ordinary movements, the rail being about three feet high.

The considerations urged upon each side are manifestly entitled to weight; and I find myself constrained to hold each in substantial fault contributing to the accident. It is impossible to absolve landsmen, accustomed to work upon vessels in port, from reasonable care and attention to their movements about vessels with which they are unacquainted. The darkness in this case made it the duty of the libelant to exercise the greater care in his movements, or else to supply himself with one of the several lights that were provided by the ship, but were unused. On the other hand, reasonable consideration for the safety of workmen coming on board is a duty imposed by law upon the owners and masters of vessels, both from humanity to the workmen, and from policy, to prevent them from becoming, through accident, a public charge. Reasonable consideration demands that some safeguards shall be provided against any peculiarities of the vessel that are naturally calculated to mislead the unwary, and to involve them in danger and injury unawares. Though this opening was somewhat smaller than the usual opening for ladders, it was not so small as to be impracticable for such a use. The difference was slight, certainly not sufficient to be ordinarily observable in the dark, nor sufficient to be in itself a notice that the opening was not a passage-way, or to serve as a warning in the night-time, when its small size might not be, and in this case was not, perceived; while its position, where a ladder is usually found, and being opposite to the forward ladder, afforded so strong a natural supposition that a ladder was there that not a doubt of it occurred to the libelant. In my judgment, it was clearly dangerous; it should have been guarded by a chain, or some other precautionary measure, such as might easily have been provided. *The Manhassett*, 19 Fed. Rep. 430; *The Pilot Boy*, 23 Fed. Rep. 103.

As I must find the libelant also chargeable with negligence in the particulars above mentioned, the question is presented whether, in a court of admiralty, in a case of personal injuries to landsmen arising from the concurrent negligence of the ship and of the libelant, any damages can be awarded; or whether the libel must be dismissed, according to the rule in common-law cases. That the rule of the municipal law should be followed has been presumed or implied in several cases in the district courts. See *The Germania*, 9 Ben. 356; *Holmes* v. *Oregon & C. Ry. Co.* 5 Fed. Rep. 523, 538; *The Chandos*, 4 Fed. Rep. 645, 649; *The Kate Cann*, 8 Fed. Rep. 719; *The Manhassett*, 19 Fed. Rep. 430. The cases of *Sunney* v. *Holt*, 15 Fed. Rep. 880, and *Dwyer* v. *National S. S. Co.* 17 Blatchf. 472, S. C. 4 Fed. Rep. 493, were cases at law. The cases cited of injury through the negligence of fellow-servants are not applicable.

This question has recently been carefully examined in the circuit

court by Judge PARDEE, of the Fifth circuit, in the cases of *The Explorer*, 20 Fed. Rep. 135, and *The Wanderer*, Id. 140. No decision has been made upon the precise point in this circuit. It is clear that in admiralty causes, even in cases of personal injuries, this court is not strictly bound by the common-law rules. The language of the supreme court in *The Marianna Flora*, 11 Wheat. 54, and *The Palmyra*, 12 Wheat. 1, cited by Judge PARDEE, sufficiently shows this. But the same considerations of justice, of prudence, and of policy, which have caused that rule to be adopted so widely in the common law and in the civil law, should doubtless lead to its observance in ordinary cases in admiralty. See *The E. B. Ward, Jr.*, 20 Fed. Rep. 702. "A party who is *in delicto*," says STORY, J., in *The Marianna Flora*, above cited, "ought to make a strong case to entitle himself to general relief."

But not infrequently cases do arise in which the common-law rule is manifestly inequitable; strong cases, in which justice, humanity, and public policy alike demand that those who, by their concurrent negligence, have caused great suffering and injury to those dependent upon their daily earnings for support should not be exempted from all charge, simply because some contributory fault may be found in the sufferer. The practice in admiralty to apportion damages in cases of mutual fault is not strictly confined to collisions and prize causes. It has been applied in this district and in this circuit to cases of loss by negligent navigation by tugs, where both parties are chargeable with fault, and public policy demands that both be made responsible, (*The Wm. Murtaugh*, 3 Fed. Rep. 404; S. C. 17 Fed. Rep. 260; *The Wm. Cox*, 3 Fed. Rep. 645, affirmed in the circuit court, 9 Fed. Rep. 672; *Connolly* v. *Ross*, 11 Fed. Rep. 342; *The Bordentown*, 16 Fed. Rep. 270;) where the tow was not in proper condition, (*Philadelphia & R. R. Co.* v. *New England Transp. Co.* 24 Fed. Rep. 505; *The Oswego*, 8 Ben. 129;) to injuries of boats on the bottom of slips, (*Christian* v. *Van Tassel*, 12 Fed. Rep. 884;) to injuries to old boats, (*The Syracuse*, 18 Fed. Rep. 828; *The Reba*, 22 Fed. Rep. 546;) and, by Judge SPRAGUE, to loss by leakage from different causes attributable to each party. *Snow* v. *Carruth*, 1 Spr. 324.

These cases proceed upon an equitable judgment and discretion that are admissible in the admiralty to a greater extent than exists in common-law causes. Where the common-law rule controls, or is supposed to be binding, the demands of obvious justice are constantly leading to new modifications of what shall be deemed such contributory negligence as to bar recovery, and to the adoption of peculiar views of the facts, both by the court and by juries, such as would not be taken but for the hardship of the case.

Deference to the ruling of the circuit judge of the Fifth circuit in the cases above quoted, as well as the approval of my own judgment, leads me to follow the rule suggested by him in cases of this kind, involving great hardship and suffering, at least until this view be overruled,

viz., "to give or withhold damages according to principles of justice and equity, considering all the circumstances of the case, not as full compensation for the injury, but as required by decency and humanity from a party without whose fault there would have been no injury." This rule has been again recognized by him in the case of *The Mabel Comeaux*, 24 Fed. Rep. 490, though not applied, because the vessel was found not in fault. I may add that the same considerations of public policy that demand that every person shall take proper care of himself—Shear. & R. Neg. (2d Ed.) § 42—also demand that ships in port, on board which accidents are constantly multiplying from the increasing complications of their arrangements, and from their modern appliances, shall not be practically exempted from the duty of taking any reasonable precautions against accident by proof of some slight fault in the sufferer; and that they shall not, by their fault and negligence, cause those who are dependent on their daily earnings for support to become a burden and a charge upon the public. "The moiety rule in collision causes was adopted," says BRADLEY, J., in *The Alabama*, 92 U. S. 697, "for the better distribution of justice among mutual wrong-doers." See, also, per NELSON, J., *The Catharine*, 17 How. 170; *The Hudson*, 15 Fed. Rep. 166.

The more equal distribution of justice, the dictates of humanity, the safety of life and limb, and the public good will, I think, be clearly best promoted by holding vessels liable to bear some part of the actual pecuniary loss, where their fault is clear, provided that the libelant's fault, though evident, is neither willful, nor gross, nor inexcusable; and where the other circumstances present a strong case for his relief. Such a rule will certainly not diminish the care of laborers for their own safety, while it will surely tend to quicken the attention of the owners and masters of vessels towards providing all needful means for the safety of life and limb.

The libelant in this case was treated at the public hospital without charge. His collar-bone was broken. He was disabled from work for about three months; and, though working steadily now, suffers some drawbacks from the accident, and probably will do so throughout his life. This is a case sufficiently strong, as it seems to me, to require the claimants to bear some part of the damage that their concurrent negligence occasioned. Following the precedent of *The Explorer, supra*, I shall charge to the libelant's own fault all his pain and suffering, and all mere consequential damages; and charge the vessel with his wages at the rate of two dollars per day for 75 working days, making $150; for which sum a decree may be entered, with costs.