### THE LACKAWANNA.

(District Court, S. D. New York. February 13, 1907.)

SHIPPING—LIABILITY FOR INJURY TO PASSENGER—FALLING THROUGH OPEN COAL HOLE.

A ferryboat *held* liable for personal injuries to a passenger through falling into an open coal hole in the deck, which was being used for coaling just prior to the boat's leaving her slip, on the ground of negligence in failing to have a personal guard or some device to warn passengers who were allowed to go on that part of the deck. The passenger also *held* guilty of negligence in a greater degree for failing to see the hole; there being plenty of light and the hole on a part of the deck not intended for passengers, although they were permitted to go there. One-third damages allowed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 544, 551.]

In Admiralty. Action by passenger for personal injuries.

Henry W. Hardon, for libellant.

James J. Macklin and John C. Seager, for claimant.

ADAMS, District Judge. This action was brought by Abraham Oppenheim against the ferry boat Lackawanna, of the Delaware, Lackawanna and Western Railroad Company line, to recover damages for personal injuries sustained through falling into a coal hole in the forward deck of the ferry boat about 2 o'clock in the afternoon of the 14th day of November, 1905, while she was lying in her slip at 14th Street, Hoboken, previous to departure for 23rd Street, New York. It is alleged by the libellant that the injuries were solely due to the negligence of the ferry boat in leaving the coal hole open, unprotected and unguarded. The claimant admits that the libellant was a passenger and fell into a coal hole but avers that it was through his own fault, negligence and carelessness, the boat all the time being engaged in finishing the receipt of coal and the opening was in plain view and had the libellant moved with care the hole could have been plainly seen and avoided, and further, the claimant denies that the hole was negligently left open.

It appears that the libellant, a banker at The Hague, arrived in Hoboken, New Jersey, on the steamer Kaiser Wilhelm on the 12th day of November, 1905, and was met by his sister, a resident of this city. Having obtained a carriage they started to cross the river on the said

ferry boat. The carriage went on the port side of the boat, preceded by another carriage and a coal cart. The load of coal from the cart was dumped into a coal hole in the centre of the deck of the boat between the two horse gangways. After the carriage came to a rest, the libellant alighted and, proceeding somewhat across the deck, fell into the hole.

A diagram, prepared by the claimant, was put in evidence by the libellant, and shows that the hole was 3 feet across the deck and 18 inches lengthwise of it. It was 52 feet 11 inches from the bow and 17 feet 4 inches from the end of the covering over the teamway, on the line of the keel. Forward of the coal hole 3 feet 10 inches was a 10 inch round iron column extending from the deck to the covering or roof of the teamway, which it supported. The base of this column was larger than the column itself by 1 foot and 10 inches, and sloped all around the column to the deck. Forward of that 2 inches was a rudder chain box, 11½ by 18 inches, extending also to the roof from the deck; outside of the box was a tapering wheel guard, 18 inches, above the deck. This extended 9 inches further toward the horse gangway than the coal hole. The covering was 12 feet 11 inches above the deck. The deck was worn by use into depressions about 5 feet from the coal hole. This boat was built in 1880 and has been in service since without any change in the opening or obstruction mentioned.

The carriage was 5 feet wide from the extreme outsides of the wheels and 7 feet 2 inches long from center to center of the hubs of the wheels and the tongue 9 feet 7 inches long. It was 6 feet 1 inch high, leaving a space of 6 feet and 10 inches between the top of the carriage and the roof. There was good light in this portion of the gangway.

It has been proved, without contradiction, that the horse gangways were habitually used by passengers. Such being the fact, it was the evident duty of the boat to provide some device to prevent them from walking into the hole or to have some one there when it was open to warn passengers against the danger. There was nothing of this kind. Some witnesses say that there was no one there at the time. One witness for the boat, a deck hand, testified he was there then sweeping up the coal, which the cart had dumped, but even if so, according to his account of the matter, his back was towards the libellant, and he does not claim to have seen him until after he had fallen into the hole. This was not the kind of a guard the boat should have provided. If it was deemed necessary to avoid the use of a device, such for example as is often placed over coal holes in the side walks of New York, then the personal guard should have been alert to warn any approaching person of the danger. In the absence of such device or warning, I think there can be no doubt of the boat's liability.

It has been strongly urged that the libellant was solely responsible for his injuries because he failed to observe due care in attempting to go forward. He said it was a very clear day with the sun shining at the time; that he wanted to look out and opened the door himself without giving the driver any warning; that after taking a step or two he fell into the hole. The hole was about 4 feet across and 4 or 5 feet forward of the carriage and about 5 feet from it. He must have

taken, therefore, two or more steps .before he reached the hole and then he did not go straight forward but partly across the boat. He walked with his head up and failed to see the hole which would easily have been perceived by an ordinary observant person. It was not similar to some cases called to my attention where it was held that the passenger had a right to presume that a railway platform was a safe place, nor is it similar to sidewalk cases. Here the libellant was in a place not designed for use of passengers on foot, though they were permitted to go there, and I do not think he was entitled to proceed with the same sense of security that he could legally have done in the classes of cases mentioned. When he attempted to go forward, he should have looked about him and seen where he was stepping. The hole and cover, with other small things about them, were plainly visible and his failure to do so, in my judgment, constituted negligence on his part to a greater degree than that of the ferry boat in failing to especially guard the hole. The boat of necessity required the use of an opening in the deck to receive the coal and the failure to notify a heedless passenger, walking in an unusual place, of its being open, was less deserving of condemnation than the passenger's obvious carelessness in going into easily discoverable danger. Therefore the damages will not be divided in halves, as is common where both vessels are found in fault in collision cases, but the libellant will be allowed one third of his damages. Hughes Admy., 193, citing The Max Morris, 137 U. S. 1, 14, 11 Sup. Ct. 29, 34 L. Ed. 586.

Decree for the libellant for one-third damages, with an order of reference.