**WEBSTER v. DAVIS et al.**

No. 13920.

United States District Court

S. D. California, Central Division.

Dec. 5, 1952.

A. F. Mack, Jr. (of Hoag & Mack), A. F. Mack, Jr. and Martin H. Webster, Los Angeles, Cal., for libelant.

Lasher B. Gallagher, Los Angeles, Cal., for respondents J. Charles Davis, II and Donald David.

TOLIN, District Judge.

This proceeding in admiralty was commenced and was tried upon a libel in personam for personal injuries.

On the night of July 3, 1951, libelant fell into an open engine hatch on board the sport fishing boat Deep C while the vessel was moored in Los Angeles Harbor. Except on the question of limitation of liability, the evidence is without conflict but the parties ask the Court to draw different inferences therefrom. Libelant claims that respondents operated the vessel for the carriage of passengers for hire and that a passenger-carrier relationship existed; and that if this be not true, he was at least an invitee. He has urged that he suffered personal injuries solely and proximately as a result of negligence of respondents. Respondents deny that he was either a passenger or invitee and assert that the accident resulted solely from libelant's own negligence. They further contend that if a passenger upon a vessel of United States registry in navigable waters of the United States is guilty of negligence which proximately contributes to the accident which produces injury, that the passenger is absolutely barred from recovery by reason of the familiar rule of contributory negligence which bars those contributorily negligent from recovery in an action at law. Respondents insist that the rule of comparative negligence has no application if the passenger-carrier relationship exists or if the injured person be an invitee seeking to become a passenger for hire. In addition to this question, the statutes relating to limitation of liability are invoked by respondents. It is in this area of the case the only conflict in evidence is found.

Respondents deny that the evidence establishes that those who arranged for libelant to go aboard the vessel before its scheduled departure time were agents of the owner. The evidence establishes that they were. Even if this were not so, it was abundantly testified on behalf of libelant and not denied by either respondent that libelant was expected upon the boat by those in charge and that the expectation was that he would arrive early in the evening and was to be provided a place to sleep. The Court finds that he was in passenger status when injured. The attack upon libelant's successful claim to passenger status is based entirely upon the supposed inadequacy of the evidence to establish that those who arranged for libelant's acceptance as a passenger were not agents of respondents. This assertion is captious particularly in view of the respondent J. Charles Davis, II having accepted and retained the charter fee for the specific cruise which cruise was subsequently made, and otherwise ratified what the agents did for him. In light of the facts established, it would be impossible to find libelant to have been a trespasser. If those in charge of the vessel expect passengers at a given time and have the vessel available at the embarcation point to receive the persons who deem themselves passengers, there is a duty to avoid leaving unguarded open hatches in unlighted areas within the principal area of expected passenger travel to the cabin.

Libelant was a member of a club which had contracted exclusive passage for its members on the fishing boat Deep C. The cruise had been paid for in advance at the agreed charter price. The boat was due to leave a designated location at Los Angeles Harbor at 2:00 A. M., July 4th. Arrangements were made by libelant and another to go aboard earlier so that they could sleep through the later evening and

the earlier hours of the cruise during which the boat would be on its way to fishing waters. Respondent Donald Davis, asserted by libelant to have been the skipper and proved to thereafter have been the only crew member on duty at the time the accident occurred, stated after the accident that he had been expecting libelant on board since 9:30 P. M. but was ashore at a coffee shop later in the evening when libelant arrived at the landing. After making the statement at the hospital to which libelant had been taken for treatment, said respondent excused himself explaining that he had to get back to the boat to turn on the lights because others in the charter party would be coming aboard.

Libelant, an active man of 68 years, came to the designated landing about 11:00 P. M. The Deep C was moored beyond another vessel which was tied to a float adjacent to the landing. It was impossible while the boats were in that position to board the Deep C from the float except by first boarding the other boat and stepping from her onto the Deep C. Although the lighting equipment on the Deep C had not been turned on and she was dark at the time libelant boarded her, there was sufficient illumination from a floodlight on a nearby steamer pier that libelant and his son-in-law were able to uneventfully cross the intervening boat and board the Deep C. Once aboard, they called for the skipper. Not receiving an answer, the son-in-law set about stowing of the fishing gear. Libelant walked forward toward the only cabin. The light reflected from the steamer pier gave meager illumination. A hatch cover had been lifted from the engine hatch but libelant did not recognize it as a hatch cover and in the dim light could not be expected to have done so. It was placed upright against the bait tank and in that position acted as a barrier to the light from the steamer pier so that the area immediately forward the upright cover lay in a shadow. The open engine hatch was within that shadow. Walking toward the cabin, libelant stepped into the shadow which obscured that open hatch from his view. He stepped into the unguarded hatch and suffered disabling injuries which included a complete anterior dislocation of the right shoulder with a minor fracture. The left ankle was severely sprained and one of the tarsal bones fractured. Whether informed by its agents as the Court finds, or by interlopers, or by some other means, respondent Donald Davis had been on board early expecting libelant to appear. Having desired some coffee, he left the Deep C by the same route that libelant employed in entering her. Although the vessel was equipped with electric lights, respondent left the vessel entirely unlighted except for the meager illumination to some areas provided by the light reflected from the nearby pier. The open hatch was in the darkness deepened by the shadow from the hatch cover. Under the circumstances, the failure to either close the hatch or leave an attendant to warn the expected passenger or to provide illumination, was negligence of a high order. If a larger or more experienced crew were necessary to achieve these elementary safety measures, it was negligence not to have adequate personnel on duty.

For reasons hereinafter treated, the Court cannot accept respondents' claim that contributory negligence is a complete defense to the action. The Court finds that libelant was guilty of negligence which was one of the proximate causes of the accident. Such contributory negligence must diminish libelant's recovery.

Libelant was 68 years of age. His venture included entry upon a vessel which he had never seen before. She was a stranger to him. Even though he had paid his passage and was entitled to assume that a high degree of care would be taken for his safety, the Court cannot find it to be ordinary prudent conduct for such a passenger to go aboard an unattended, unlighted strange vessel at night without providing some illumination himself. The use of a pocket flashlight or even the striking of a match would have provided enough light to disclose the open engine hatch. When traversing a strange area way on a strange boat, if the darkness be such that one cannot see an open pit in the direct line of travel, the traveler must proceed by lighting or feeling his way—not by

complete reliance upon the legal duty of those in charge of the vessel. The Court finds the negligence of the libelant to be equal to that of the respondents.

■ This brings us to a consideration of respondents' insistence that contributory negligence is an absolute bar to libelant's recovery of damages. Respondents concede that a contributorily negligent seaman may recover damages but they assert that a paying passenger is in a different position. They claim that the carrier for hire has the advantage of a common-law doctrine of contributory negligence as distinguished from the maritime rule of comparing negligence and deducting from the injured victim's recovery. The only authority cited is Pacific Steamship Company v. Holt, 9 Cir., 77 F.2d 192. The Court has examined not only the opinion but the record in that case. An immediate distinction is apparent. That case was prosecuted by a plaintiff, not a libelant. It was an action at law, not in admiralty. Whereas libelant here was not entitled to a trial by jury, plaintiff there was entitled to and received such a trial. One of the minor issues in that case was one of the sufficiency of jury instructions upon contributory negligence. The Court of Appeals found a conventional statement of the effect of contributory negligence as a bar to the action to be a correct statement but the reason for this is plainly that the action was prosecuted as an action on the law side of the Court rather than in admiralty. That a passenger for hire upon a common carrier can maintain his action in admiralty and suffer only a diminution of damages if he be contributorily negligent, has been recognized in courts of the United States since at least 1907 when The Lackawanna was decided, D.C., 151 F. 499. That is the earliest passenger case which has come to our attention. It, in turn, cites but one case, The Max Morris, 1890, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586. The Max Morris was tried in the District Court for the Southern District of New York. The opinion of that Court is reported in 24 F. 860. The injured person was a stevedore who went aboard a steamship to shovel coal. He was not an employee of the ves-

sel nor was he a passenger. The trial court found that there was negligence by those in charge of the vessel. It was found, 24 F. at pages 862–864:

"* * * the libelant also chargeable with negligence in the particulars above mentioned, the question is presented whether, in a court of admiralty, in a case of personal injuries to landsmen arising from the concurrent negligence of the ship and of the libelant, any damages can be awarded; or whether the libel must be dismissed, according to the rule in common-law cases. That the rule of the municipal law should be followed has been presumed or implied in several cases in the district courts. * * *

"* * * The practice in admiralty to apportion damages in cases of mutual fault is not strictly confined to collisions and prize causes. It has been applied in this district and in this circuit to cases of loss by negligent navigation by tugs, where both parties are chargeable with fault, and public policy demands that both be made responsible * * *.

*     *     *     *     *     *

"The more equal distribution of justice, the dictates of humanity, the safety of life and limb, and the public good will, I think, be clearly best promoted by holding vessels liable to bear some part of the actual pecuniary loss, where their fault is clear, provided that the libelant's fault, though evident, is neither willful, nor gross, nor inexcusable; and where the other circumstances present a strong case for his relief. * * *"

The Supreme Court approved of the view of the trial court and after quoting the last sentence herein quoted, added, "We think this rule is applicable to all like cases of marine tort, founded upon negligence, and prosecuted in admiralty, as in harmony with the rule for the division of damages in cases of collision. The mere fact of the negligence of the libelant as partly occasioning the injuries to him, when they also occurred partly through the negligence of the officers of the vessel, does not debar

him entirely from a recovery." [137 U.S. 1, 11 S.Ct. 33.]

Seventeen years later the first recorded application of the rule to a passenger-carrier case was made in The Lackawanna, D.C., 151 F. 499.

Although not a passenger case, see also Socony-Vacuum Oil Company v. Smith, 1939, 305 U.S. 424, 431, 59 S.Ct. 262, 266, 83 L.Ed. 265, where the Court said:

"Any rule of assumption of risk in admiralty, whatever its scope, must be applied in conjunction with the established admiralty doctrine of comparative negligence and in harmony with it. Under that doctrine, contributory negligence, however gross, is not a bar to recovery but only mitigates damages. * * *".

See also, The Explorer, D.C., 20 F. 135, cited in The Max Morris, wherein the Fifth Circuit first applied the rule of comparative negligence. Since these earlier cases, Admiralty Courts in the United States have uniformly followed the practice of diminishing damages to the extent that contributory negligence entered into producing them. No case asserting a contrary rule and decided after The Max Morris has been brought to our attention. Libelant's damages will accordingly be diminished 50% from the amount hereinafter found to have been suffered by him.

■ Libelant is a certified public accountant with a high earning capacity. Observed at the time of trial, he appeared to be substantially recovered from his injuries although the ankle injury still causes him pain and, in walking, he favors the injured member. He conceded that his other injuries, while extremely painful and disabling during the recuperative period, have left no permanent ill effect. $3,500 is found to be the total of general damages. Libelant claims loss of earnings and testified to the loss of certain specific employments which he would have handled had he been available but which were lost by reason of his disability. Some of these the Court finds were handled by libelant's firm and the full fee was accordingly not entirely lost. In addition, libelant claims

the loss of earnings resulting from his unavailability during hospitalization. Undoubtedly there was damage suffered by reason of this but not in the amount claimed by libelant. The Court finds the loss of earnings to be $3,800. Libelant's medical expense, hospitalization, necessary transportation to the offices of his physicians and to the hospital, and related expenses, together with the costs of all future medical expense, is found to be $1,000. By reason of libelant's contributory negligence, which the Court has found to be 50% of the total negligence involved in the action, libelant is hereby awarded total damages in the sum of $4,150 which is 50% of $8,300.

■ There was a prayer for limitation of liability pursuant to provisions of Secs. 4281 to 4289, inclusive, of the Revised Statutes of the United States—46 U.S.C.A. §§ 181 to 188, inclusive. The Court finds the value of the vessel to be $6,000. She earned $100 by the cruise. Liability is therefore limited to $6,100. Because damages have been fixed at a lesser sum, limitation of liability enters into the case only because respondent J. Charles Davis, II insists that he is the owner of only one-half of the vessel and that his liability is limited to the value of his one-half interest. In a trial wherein his proctors insisted upon meticulous application of all the rules of evidence and continually moved to strike the testimony of witnesses upon the grounds that the witness "was stating his conclusion", respondent J. Charles Davis, II testified on his own behalf that he and another had originally purchased the Deep C together and that he had entered into a conditional sales contract with that other whereby he was purchasing the entire interest in the vessel. That testimony was all that was offered as to the character of the contract. He did not produce or indicate any interest in producing the contract even after the Court stated that his testimony, which characterized it as a conditional sales contract, merely stated his conclusion as to the legal effect of the instrument and that the Court would look to the document itself and determine whether it had the characteristic of a conditional sales contract or whether title had passed to Mr.

Davis. It further developed on cross-examination that although Mr. Davis had urged he was but a half owner of the vessel, he conceded that he had made a down payment upon acquisition of his former co-owner's interest and that there had been several installments paid on the contract. Title is not reserved to a vendor merely by an agreement that payment of the purchase price be made in whole or in part at a later time or times. In view of the lack of definiteness in his evidence and upon his failure of proof, the Court finds that Mr. Davis is the owner of the vessel. The Court cannot, and does not, find that there was a conditional sales contract. Even if there were, it would not have the effect of limiting Mr. Davis' liability to whatever amount he had paid in on his acquisition of the title. This question is disposed of in American Car & Foundry Co. v. Brassert, 289 U.S. 261, 53 S.Ct. 618, 77 L.Ed. 1162.

Findings and judgment will accordingly be prepared and submitted by proctors for libelant.