**M. G. STEWART, Plaintiff,**

v.

**GEORGE W. DAVIS & SONS, INC., a Florida Corporation, Defendant.**

**Civ. A. No. 853.**

United States District Court,
N. D. Florida,
Marianna Division.

April 13, 1972.

———◆———

Jerry W. Gerde, Panama City, Fla., for plaintiff.

Alton O. Paulk, Panama City, Fla., for defendant.

## OPINION—ORDER

MIDDLEBROOKS, District Judge.

In this action plaintiff sues defendant for shipboard injury sustained while plaintiff was deep-sea fishing aboard one of defendant's vessels which had been chartered out of Panama City, Florida, the home port of the defendant corporation. It is alleged by plaintiff that defendant breached its duty of care to a fare-paying passenger and that as a result of defendant's negligence plaintiff was injured. To these allegations defendant answered by denying negligence on its part and by affirmatively alleging that plaintiff himself was negligent which negligence it is alleged proximately caused or contributed to plaintiff's injury. Jurisdiction of this Court is invoked pursuant to Title 28, United States Code, Section 1333. Testimony having been taken and evidence having been received, and this Court having considered depositions and pleadings on file in this cause, enters the following findings of fact and conclusions of law as required by Rule 52(a), Federal Rules of Civil Procedure.

## FINDINGS OF FACT

■ Plaintiff at the time of his injury was an employee of Greyhound Lines, Inc. In October 1969, plaintiff in the course of his employment was making regularly scheduled runs from Chattanooga, Tennessee, to Macon, Georgia. On one such run plaintiff and certain of his passengers had chartered the Ocean Queen, one of defendant's vessels. They arrived dockside at Panama City, Florida, on October 7, 1969. It was the testimony of the several witnesses that plaintiff, an avid fisherman, would often organize these fishing trips to Panama City, Florida, make the necessary arrangements with defendant as to the charter of a vessel and then drive the participants down to Panama City, Florida, for two or three days of deep-sea fishing. Plaintiff himself received no extra compensation from his employer or commission from defendant for his efforts in organizing these fishing trips. Plaintiff, however, in consideration of his efforts for arranging the charter of defendant's vessel, was allowed to fish on board free of charge.

■ On such expeditions it was disclosed that defendant furnished boat, crew and fishing equipment. Crew members were provided to assist passengers during those hours when they were fishing. On this particular trip there was one crew member for every ten passengers who were fishing. Crew members were instructed to mark and string the catch of each passenger inasmuch as the catch of each passenger was tagged or marked with a metal roofing disc attached to the string which disc defendant recognized as a possible hazard. Aware of the likelihood of harm which might befall the inexperienced fisherman attempting to mark and string his catch in this method, defendant felt it necessary that only crew members should be allowed to perform this task. For this reason passengers were asked that they not tag and string the fish but that they should notify the crew members who would see to this chore.

On this particular trip which is the subject matter of this action, plaintiff and the other passengers boarded the Ocean Queen early on the morning of October 7, 1969, and soon departed for the fishing grounds; by 8:00 A.M. that morning they began to fish. After fishing for some time plaintiff went aft and obtained a disc from a cigar box in order to mark the catch for one of his fellow passengers. Plaintiff volunteered to do this inasmuch as the other two crew members were busy assisting other passengers. After plaintiff had strung and tagged the fish he was about to grab it around the gill area and carry it to the box to be placed for storage. At this point the fish "flopped over" causing the metal disc to slide between and across plaintiff's fingers, cutting them and causing him injury.

Plaintiff was treated on board by the captain of the vessel. There is some conflict in the testimony as to the adequacy of first aid equipment on board at the time of plaintiff's injury. Plaintiff's hand was wrapped and bandaged and on the afternoon of the following day, upon the vessel's arrival in port, plaintiff went to the emergency room of a local hospital and received treatment for his injury. The cost of this treatment was $10.00.

Testimony further reveals that during the interval between plaintiff's injury and the vessel's return to Panama City, Florida, plaintiff attempted to fish but that his efforts were thwarted by the injury to his hand.

The Court finds that being aware of the potential hazard created by the presence of the metal roofing discs used to tag and string fish defendant's employees knew that passengers would attempt to mark and string their catch particularly in such times when the fishing was good and there were not sufficient crew members on board to assist each passenger in this task.

The injury to plaintiff prevented his immediate return to work and as a consequence he lost twelve days' earnings. At that time plaintiff was earning $31.97 a day. His inability to drive back to Chattanooga, Tennessee, also necessitated his having to find a replacement driver for this return trip home and plaintiff was saddled with this added cost of $31.97. Upon his return to Chattanooga, plaintiff was treated by his local physician on several occasions for which treatment he expended $34.00.

The Court finds that plaintiff has suffered a permanent though not disabling injury. Testimony does disclose that in cold weather or during the course of prolonged driving plaintiff will suffer pain sensations in those fingers which were injured but not to such an extent to impair plaintiff in the performance of his regular duties.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the subject matter of and the parties to this action, Title 28, United States Code, Section 1333.

Plaintiff was a "paying passenger" on board defendant's vessel at the time of his injury. A legal consideration passed from plaintiff to defendant by virtue of his providing customers for defendant.

Defendant owed to plaintiff the duty of a high degree of care to prevent injury to plaintiff and other fare-paying passengers. Though not an insurer of the safety of its passengers, a shipowner is bound not only by what it actually knows but also by what it should have known. See e. g., McCormick Shipping Corp. v. Stratt, 322 F.2d 648 (5th Cir. 1963).

Under the circumstances as hereinbefore recited, the failure of defendant to adequately warn plaintiff and other fare-paying passengers of the potential hazard in the use of the metal roofing discs as marking tags and to provide adequate safeguards and to take precautionary measures for their safety was negligence and violated that degree of care owing from defendant to plaintiff. If a larger or more experienced

crew were necessary to achieve these safety measures it was negligence not to have adequate personnel on duty. Webster v. Davis, 109 F.Supp. 149 (S.D.Calif.1952).

■ ■ Defendant has interposed the affirmative defense of contributory negligence. The Court finds that plaintiff himself was guilty of negligence which was one of the proximate causes of his injury. Such negligence on his part would not be a complete bar to his recovery of damages in this action but it would diminish the amount of the award to which he is entitled. Webster v. Davis, supra, at 151–152. This is the rule of comparative negligence articulated long ago in The Lackawanna, 151 F. 499 (S.D.N.Y.1907).

The evidence discloses that plaintiff had been aboard defendant's vessels on prior trips and was aware of the customary means of marking the catch and stringing them once they had been marked. The Court finds that there was an apparent hazard which plaintiff failed to appreciate and that he failed to take the necessary precaution for his own safety; further, it is found that plaintiff's conduct subsequent to his injury may have aggravated his condition caused as the result of the negligence of both parties.

■ ■ One thousand five hundred dollars ($1,500.00) is found to be the total of general damages suffered by plaintiff. The total award of compensatory damages, i. e. loss of earnings and related expenses and medical expenses, to which plaintiff is entitled is five hundred three and 70/100 dollars ($503.70). By reason of plaintiff's own negligence, which this Court finds to be 25% of the total negligence involved in the action, plaintiff is hereby awarded total damages in the sum of one thousand five hundred two and 77/100 dollars ($1,502.77).

Accordingly, it is

Ordered that judgment shall be entered in favor of plaintiff against defendant in the amount of one thousand five hundred two and 77/100 dollars ($1,502.77) with costs to be taxed against defendant. The Clerk of this Court is directed to enter final judgment in conformity herewith.